O’Neall, J.
I concur fully in the affirmation of the circuit decree, on two grounds. 1st. That the decree of the Court of Equity ordering the sale of the land, renders the title of the complainant perfect, inasmuch as all the persons who had an interest in the land, who were then in esse, were (according to the statement in the bill) made parties. 2d. That Mrs. Parr, the purchaser of Van Lew’s bond, purchased without notice of this defence, and indeed with his assent, and has recovered a judg *348 ment at law. Under such circumstances, the Court of Equity never will disturb her rights. For she has an equal, if not a superior equity to the complainant.
My present purpose, however, is more to explain the various cases decided, in the courts of law, on the question how far an outstanding title can be set up as a defence at law, than for any thing else.
The defence at law, before eviction, proceeds upon the ground that the covenant of seizin is broken by a want of title in the seller, and damages for this breach are allowed, as a discount. In the case of Mackey vs. Collins, 2 N. and M’C. 186, it was held, that the warranty, in our deeds, drawn according to the Act of 1795, is both a covenant of seizin, and for quiet enjoyment, and that an action might be brought before eviction, on shewing an existing paramount title in another. This was in conformity to the previously adjudged and well considered case of Furman vs. Elmore, then unpublished, and apparently unknown to the bench or bar, but which was most fortunalely brought to light and published in a note to Mackey vs. Collins, 2 N. and M’C. 189. The same principle was affirmed in Biggus vs. Bradly, 1 M’C. 500, with this qualification, that a purchaser in possession should not be allowed to purchase an outstanding title, and sue for a breach of the covenant of seizin. In that case, and many others, there is a good deal said about an implied warranty arising from a full price, in the sale of lands, as well as in the sale of chattels : but it is manifest such a doctrine has no foundation in law, and was not necessary for the decision of the cases at law, when they rested on the covenant of seizin in the deed. The principle, ruled in Mackey vs. Collins was re-affirmed in Johnson vs. Veal, 3 M’C. 449. But in that case, another very important principle, and safeguard to the application of the doctrine, was settled and fixed, — that as the action lay for a breach of the covenant of seizin, before eviction, by shewing that the grantor had not title at the execution of his deed, the statute of limitations began to run from the execution of the deed, and that in such a case, four years would bar his remedy by action of covenant.
At law there formerly were three classes of cases, in which a purchaser could be1 relieved, in part or in whole, from the payment of the purchase money. 1st. Where there was a partial failure of consideration, as where part of the land sold and con *349 veyed was covered by a paramount title, which might, and in the opinion of the jury would so far deprive the party of the benefit of his purchase. This is essentially matter of discount, and, as is decided in Farrow vs. Mays, 1 N. and M’C. 312, can be given in evidence only under a notice of discount filed, and served on the opposite party. In such case the measure of damages to be allowed to the party on his covenant of seizin, is the pro rata value of the land covered by the paramount title, estimated by the purchase money and interest, and the relative value of the land thus taken off in the purchase, to the land remaining. Furman vs. Elmore, 2 N. and M’C. 199 to 204. The 2d class is where the grantor when he sold had, or at the trial has, no title to the land. In such case, the vendee, having acquired no title, has of course no consideration for his promise, and hence if the action be on a parol contract, it may be regarded as a nudum pactum, and the vendee thus relieved at law. In such a case, as is said in Farrow vs. Mays, the defence may be given in evidence under the general issue. But in an action on a specialty, as is explained in Hunter vs. Graham, 1 Hill, 370, before the Act of 1831, the failure of consideration must have been specially pleaded, or set up by way of discount. That Act merely lets the party into his defence under a notice instead of a plea. In a suit on a specialty, therefore, it would seem the more prudent course for a defendant, (and the most consistent with legal rules) to regard his covenant of seizin as broken to the whole extent of his purchase money and interest, and to claim damages accordingly by way of discount. In such a case, if the jury should be satisfied, that in fact as well as in law the purchaser took nothing by his title, and that he will be ousted by the paramount title, they may find a verdict for the defendant, not on the ground that the failure of title is a rescisión of the contract, but that the damages, on the covenant of seizin, are exactly equal to the purchase money and interest. In such a case there is no necessity for an appeal to equity to put the parties in statu quo. For the vendor’s deed conveys no title to the vendee. Neither can the vendor claim an account fof rents and profits. For his vendee is liable to the owner of the paramount title for the rent of the land during the time he may be in possession. Taylor vs. Fulmore, (1 Rich. 52.) Both of these classes of cases have always been and still are regarded as constituting legal defences examinable and relievable in a law court. The 3d class of cases, where there was a good title in part and *350 in whole conveyed by the vendor to the vendee, and the object of the vendee’s purchase was defeated, either by a part failure of the title, or the failure of some incident to the purchase, represented ty the vendor, or shewn by the title, as resulting from the purchase, the purchaser formerly was held to be relievable at law, although he might be in possession, by a rescisión of the contract. The case of Gray vs. Handkinson, 1 Bay, 278, which seems to have been the beginning of this doctrine, held that a mill seat was the principal inducement to the purchase, and that being taken away by an older title, entitled the vendee to a res-cisión of the contract. In that case the Judges speak of the defence as a kind of equitable one, which was allowed noto in a Court of Law as well as in Equity, on the ground of fraud. So far as fraud is concerned, I have no doubt the defence.is good anywhere. But there is no fraud, where both vendor and ven-dee are alike ignorant of the defect: and that was the Case iii Gray vs. Handkinson. In a note to that case, the rule of the decision is ascribed to the doctrine that a sound price warrants a sound commodity. It was followed by the case of the State vs. Gaillard, 2 Bay, 11. In that case, the defence rested upon the ground, that when the land was sold, a plat was .presented, which represented a fine copious stream of water running nearly through the centre of the tract, with a mill seat upon it: and that these advantages were the principal inducements to the purchase: that they had failed, inasmuch as the supposed stream was a dry gully three-fourths of the year. In that case, the doctrine, that a sound price warrants a sound commodity, was applied to land as well as to personalty, and that by the general terms of our discount law, a defence predicated of it, could be set up. In that case, the verdict of the jury rescinded the contract, notwithstanding the contract was executed both by the execution of titles and the delivery of possession to the vendee. It is possible that that case might stand upon the fraud resulting from the misrepresentation at the sale, without resorting to the wild doctrine, that there was an implied warranty from the price paid, in addition to the legal covenants of seizin and quiet enjoyment. These two cases were followed by many others, where from misrepresentation, or a failure of consideration, in part, which defeated the purchaser’s object, in making the purchase, the contract was rescinded. The extravagant results to which we were conducted, may be illustrated by the case of the Com *351 missioner in Equity vs. Robert R. Pearson et al. In that case, the land had been sold under a decree in equity in the case of Delilah Perry by her committee vs. The Executors of Aaron Cotes, dec'd., and purchased by the defendant, Pearson, at a great price. He received titles, — was in possession tor years. He made several payments on his bond. At last, when sued, he succeeded in shewing that there was an outstanding title to an undivided share of about one-eighth of the land, in persons who were not parties to the case under the decree in which the land had been sold. The constitutional court, against the finding of a jury, allowed the defence: and the vendee was permitted to rescind the contract. At length, however, the court awoke to the mischievous consequences of allowing such defences, and in the cases of Carter vs. Carter, 1 Bail. 217— Bordeaux vs. Cave, 1 Bail. 250, and Westbrook vs. M’Millan, 1 Bail. 259, undertook to retrace their steps. In those cases, they declared, that where the contract of sale was executed by the delivery of titles and possession to the purchaser, and he had not been evicted, that for a failure of title to part of his purchase, although it might defeat its object, the contract would not be rescinded in a, Court of Law ; and that the party must seek relief in a Court of Equity. The reason assigned, that a Court of Law could not restore the parties to their original condition, by compelling the vendee to convey the title, which as far as the vendor had title, conveyed a good legal estate to him, and to account for rents and profits to the extent of the vendor’s title, were certainly true, and shewed that in such a case a rescisión at law could not take place. The rule of these cases was admirably explained by the only surviving member of the excellent court which pronounced the decisions in Carter vs. Carter, Bordeaux vs. Cave, and Westbrook vs. M’Millan, in the case of Johnson vs. Purvis, 1 Hill, 326. In that case, Johnson, J. said — “The first ground of this motion is founded on a misconception of the cases of Carter vs. Carter, 1 Bail. 217, Bordeaux vs. Cave, Id. 250, and Hext ads. Morgan, decided in 1829, and from what has occasionally fallen from the bar in reference to these cases, I am led to conclude, that the impression is not unusual that want of title in the vendor of land, either in whole or in part, is not a good defence to an action brought at law to recover the purchase money. But these cases inculcate no such rule; they maintain, however, that a Court of Law cannot rescind a contract *352 for the sale of land, on account of a partial failure of consideration, on the ground, principally, that a Court of Law has not the full power to do full and adequate justice to the parties.” When these observations are understood as applying to an executed contract accompanied by possession of the land, they give a perfect exposition of the rule as settled by the Court of Appeals in 1829, and ever since inflexibly maintained by the Law Court.
According to this rule, 1 have no doubt, if Yan Lew’s title were defective, he could not have set it up at law. Unquestionably the title of David Myers conveyed to him the life estates of himself and his five other brothers and sisters. The defect in his title, if there be any, is that the children of the tenants for life who may attain to the age of 21 years, upon the death of their respective parents, will be entitled to the estate in remainder. For if there had been a doubt as to the limitation over in their favor, on the clauses of the will cited in the decree, the codicil removes it. The danger to his title was, therefore, altogether future. It could not be the subject of discount, in the Law Court, for the covenant of seizin was not as yet broken: and if it were, it would be impossible safely to estimate the damages. Hence, therefore, I conclude, that if the plaintiff could set up his supposed defect of title against Mrs. Parr, that it would be very properly examinable and relievable in Equity. For I take it, both parties, vendor and vendee, supposed the title good. In such case, there can be no objection to equity between the original parties, giving a relief by either rescinding the contract, and compelling the purchaser to re-convey, account for the rents and profits and for waste, or by refusing to rescind the contract, where the court can protect the purchaser, as was done in Thomson, adm’r. of Moorman, vs. The Ex’rs. of Lewis, by perfecting the title : or, as might have been done in this case, if Myers had continued to hold the purchase debt, by compelling him to secure the purchaser against the future estate by leaving unpaid the principal sum, (the purchaser paying the annual interest,) until the future estates might arise. There are, however, many cases of fraud or mistake, where although the contract is executed, yet the Court of Equity will rescind the contract. But it is not necessary that I should pursue this branch of the case. The opinion delivered by Chancellor Johnston has fully explained and enforced the doctrine applicable to it.